UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MELISSA GIFFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| GALEN MEDICAL GROUP, P.C., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Melissa Gifford, by and through counsel, files this Complaint and alleges as follows:

### I. INTRODUCTION

1. Defendant hired Ms. Gifford as a Site Manager at its Ridgeside medical practice in July 2022. When Ms. Gifford reported discriminatory comments made by a doctor and advocated for protected classes in the face of discrimination, she was denied a promised salary increase, shuffled around to lower-level positions, and ultimately terminated.

2. Therefore, Ms. Gifford brings this civil action against Defendant to redress unlawful employment practices under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 *et seq.*, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), and the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

### II. JURISDICTION & VENUE

3. This Court has original subject matter jurisdiction over Ms. Gifford's claims pursuant to 28 U.S.C. § 1331.

1

4. This Court has personal jurisdiction over Defendant Galen Medical Group, P.C., a Tennessee for-profit corporation with its principal place of business in Hixson, Hamilton County, Tennessee.

5. Venue is proper in the Eastern District of Tennessee pursuant to 28 U.S.C. § 1391(b) because Defendant is domiciled in this judicial district and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district.

### III. ADMINISTRATIVE PREREQUISITES

6. Ms. Gifford has exhausted administrative remedies and complied with all statutory prerequisites to her Title VII and ADA claims. Ms. Gifford timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) regarding the facts underlying this action.

7. The EEOC issued a Dismissal and Notice of Rights letter on February 9, 2024, a copy of which was served on both Plaintiff and Defendant.

### IV. THE PARTIES

8. Ms. Gifford is a citizen and resident of Rocky Face, Whitfield County, Georgia.

9. Defendant Galen Medical Group, P.C. ("Defendant" or "Galen") is a Tennessee for-profit professional corporation with its principal place of business located at 4976 Alpha Lane, Hixson, Tennessee 37343-5470. Defendant may be served with process through its statutory registered agent, Katie Ashby, 4976 Alpha Lane, Hixson, Tennessee 37343-5470.

10. At all relevant times, Plaintiff was an "employee" and Defendant was an "employer" within the meaning of Title VII, the ADA, and Section 1981.

## V. FACTS

11. Ms. Gifford's successful career in medical office management has spanned over 30 years, including approximately 20 years managing OB/GYN practices.

12. In June 2022, Ms. Gifford interviewed for a Site Manager position at Defendant's "OBGYN Ridgeside" medical practice located in Chattanooga, Tennessee ("Ridgeside"). She was excited to finish her career with Defendant.

13. During one of her initial interviews for the Site Manager position, Dr. Scott Harnsberger asked Ms. Gifford several inappropriate and potentially unlawful questions, including her age, marital status, and whether she had any children. Ms. Gifford knew these questions were improper but gave Dr. Harnsberger the benefit of the doubt, considering she had just met him and was optimistic about the potential final chapter in her career.

14. After several interviews, Defendant offered Ms. Gifford the Site Manager role at Ridgeside, and she accepted. Her first day on the job was July 7, 2022.

15. Defendant set her annual salary at $65,000, with a promised increase to $75,000 after 90 days.

16. Ms. Gifford performed her duties well. She received frequent praise for her performance, including a thank-you card from then-Director Karen Scuilli, stating, "So glad you joined the Galen team. I know there have been many stressful days, but I hope you know you are doing an amazing job. We need your skills + experience to turn Ridgeside around. Hope you have a great week! I appreciate you!"

17. Unfortunately, all was not well. Over the next several weeks, Ms. Gifford heard Dr. Harnsberger make discriminatory comments about Defendant's employees and potential new hires.

18. During one incident, Dr. Harnsberger communicated his desire to screen out African

American job applicants for Medical Assistant job openings at the Ridgeside office. One African American applicant's resume had an email address with "Blackbeauty48" as the prefix.

19. Ms. Gifford selected two African American applicants for the open positions. Dr. Harnsberger stated that he and Ms. Gifford were from the "same era," and that he was concerned about hiring African American individuals due to the ongoing Black Lives Matter movement.

20. Dr. Harnsberger stated the African American applicants would "not work out." Ms. Gifford vigorously opposed Dr. Harnsberger's discriminatory acts and refused to implement Defendant's discriminatory hiring decisions.

21. Around this time, Dr. Harnsberger pulled Ms. Gifford into his office and told her that although Galen employed her, she was to do what he said, no questions asked, because he had worked too long to give up his business.

22. Ms. Gifford reported her concerns to Ms. Scuilli and advocated for the African American job applicants. Upon information and belief, Ms. Scuilli had become Defendant's Chief Operations Officer around this time. Ms. Scuilli told Ms. Gifford to proceed with hiring two of the African American job applicants, which she did.

23. Ms. Gifford also witnessed Dr. Harnsberger discriminate against at least one employee with a known disability. The employee had suffered a birth injury or defect that caused the employee's right arm to be non-functioning and hang limply.

24. Dr. Harnsberger stated he did not want this employee to be the "face" of the office, which Ms. Gifford understood meant he did not want someone with a visible disability greeting and interacting with patients.

25. Ms. Gifford discussed Dr. Harnsberger's discriminatory comments and actions with Ms. Scuilli and Operations Manager Victoria Pate in July and August 2022.

4

26. Upon information and belief, Defendant forced Ms. Scuilli to resign within approximately two months after these events occurred.

27. Upon information and belief, Defendant terminated Ms. Pate within three months of these events.

28. Ms. Gifford again reported the incidents to CEO Charlie Lathram, in-house legal counsel Andrew Snyder, and Ms. Scuilli on August 9, 2022. She also submitted a letter detailing some of the incidents.

29. Earlier the same day, Dr. Harnsberger had threatened to terminate the disabled employee, but Ms. Gifford advocated for this employee during her meeting with Defendant's upper management.

30. Dr. Harnsberger's actions made Ms. Gifford feel anxious and negatively impacted her ability to perform her job. Dr. Harnsberger's actions, perceived vindictive nature, and disregard for rules or the law made her uncomfortable speaking with Dr. Harnsberger about various office operations.

31. Due to Ms. Gifford's advocacy for protected groups and opposition to Defendant's discrimination, and upon information and belief, Defendant left her out of the decision-making process for operational decisions.

32. Upon information and belief, Dr. Harnsberger requested that Ms. Gifford be terminated or removed from the Ridgeside office in August 2022.

33. At Defendant's prompting, Ms. Gifford agreed to be temporarily transferred to an Administrative role with the understanding that she would be assigned the next available Site Manager position at a different practice. She worked in this Administrative role from approximately August 18 through September 6, 2022.

34. Defendant next transferred Ms. Gifford to an Analyst position in the Quality Department. She worked in the Analyst position from approximately September 7 through November 9, 2022.

35. Upon information and belief, Defendant filled one or more Site Manager positions during this time without notifying or offering the positions to Ms. Gifford.

36. On or about October 24, 2022, Ms. Gifford met with CEO Mr. Lathram to report retaliation against her for reporting discriminatory comments and actions. She provided examples of the retaliation, including being passed over for a new Site Manager position despite Defendant onboarding several new Site Managers and being denied the promised $10,000 salary increase after 90 days.

37. Mr. Lathram justified the salary increase denial by stating Ms. Gifford was not a site manager anymore, to which Ms. Gifford responded, "Through no fault of my own."

38. Ms. Gifford told Mr. Lathram she was being punished for raising discrimination concerns.

39. Mr. Lathram said he was considering Ms. Gifford for a site manager position in Dr. Kaushal Chaudhari's Fort Oglethorpe, Georgia, office. Ms. Gifford was alarmed by this proposal because she knew Dr. Chaudhari had expressly requested *not* to have a Site Manager.

40. Mr. Lathram assured Ms. Gifford that Dr. Chaudhari would accept a site manager regardless of his preferences.

41. Following the October 24 meeting, Ms. Gifford was hospitalized for high blood pressure and atrial fibrillation caused in whole or in part by the stress of being retaliated against by Defendant.

42. On or about November 9, 2022, Ms. Gifford spoke with Mr. Lathram and then-Site

Manager Shannon Kitchings, in which Ms. Gifford again expressed her concerns that Dr. Chaudhari did not want a site manager at his office. However, Mr. Kitchings instructed her to report to Dr. Chaudhari's office the following morning.

43. Ms. Gifford knew Defendant was forcing her into a dead-end, temporary position. However, Ms. Gifford did as instructed, and upon arriving, Dr. Chaudhari told her that he did not want her there, that it was not personal, but he did not want to pay her salary.

44. On or about December 19, 2022, Ms. Gifford had a second heart procedure performed.

45. On January 19, 2023, Ms. Kitchings sent Ms. Gifford a text message asking her to meet at the corporate office to "discuss some things."

46. At this meeting, Defendant terminated Ms. Gifford's employment due to the alleged elimination of her position at Dr. Chaudhari's office and offered her 30 days' severance pay.

47. Ms. Gifford asked why she was being let go. Defendant's in-house counsel Mr. Snyder responded that Defendant had no comparable positions available. She pointed out that the previous Administration and Quality Department positions had not been lateral moves either. Mr. Snyder said her "expertise" was beyond open positions, and a recent Regional Manager opening had been filled.

48. The same day, Ms. Gifford confirmed with Human Resources that the Regional Manager position was unfilled. Soon after, Defendant posted Site Manager positions on Indeed.com and other job websites.

49. In fact, upon information and belief, Defendant posted approximately 27 open positions, including in Administration, where Ms. Gifford had previously worked shortly after her termination.

50. At the time of her hire, Ms. Gifford hoped to finish her career with Defendant. Now, she was terminated for "rocking the boat" by opposing Defendant's desire to engage in unlawful discrimination unchecked.

51. By subjecting Ms. Gifford to a retaliatory hostile work environment, Defendant violated Title VII, Section 1981, and the ADA.

52. By retaliating against Ms. Gifford for advocating for protected classes and opposing and refusing to participate in discrimination, Defendant violated Title VII, Section 1981, and the ADA.

53. As a result of Defendant's illegal actions, Ms. Gifford has suffered damages.

## VI. CAUSES OF ACTION

**<u>Violation of Title VII, Section 1981, and the ADA</u>**
**(Hostile Work Environment, Discrimination, and Retaliation)**

54. Ms. Gifford incorporates the forgoing facts as if fully restated herein.

55. Title VII, Section 1981, and the ADA prohibit an employer from taking adverse employment actions against or discriminating against an employee because she opposes unlawful discrimination, because she participates in activity opposing discrimination, or because she advocates on behalf of individuals protected under Title VII, Section 1981, or the ADA.

56. Defendant violated Title VII, Section 1981, and the ADA by retaliating against Ms. Gifford because of her opposing discrimination on the basis of race, color, and disability, participating in protected activity opposing discrimination, and/or advocating on behalf of protected classes.

57. Defendant created a hostile work environment based on Ms. Gifford's protected activities through its retaliatory actions that affected Ms. Gifford's terms and conditions of employment.

58. Defendant retaliated against Ms. Gifford for opposing and/or participating in activity opposing discrimination based on race, color, and disability on behalf of others.

59. Defendant is vicariously liable for the actions of its managerial agents and directly liable for its own discriminatory and retaliatory actions.

60. As a proximate result of Defendant's actions, Ms. Gifford has been and continues to be damaged in an amount to be determined at trial.

61. Consistent with 42 U.S.C. § 1981a, Ms. Gifford is entitled to punitive damages because Defendant engaged in a discriminatory practice or practices with malice or reckless indifference to Ms. Gifford's federally protected rights.

## VII. PRAYER FOR RELIEF

62. Based on the foregoing, Ms. Gifford prays for the following relief:

   A. Economic damages, including, but not limited to, back pay and front pay, plus pre- and post-judgment interest;

   B. Compensatory damages, including, but not limited to, damages for emotional pain, suffering, grief, humiliation, and embarrassment;

   C. Lost future earnings;

   D. Punitive damages;

   E. Reasonable attorneys' fees;

   F. The costs and expenses of this action;

   G. An offset to mitigate the tax burden of any lump sum award;

   H. Injunctive relief barring Defendant from undertaking such discriminatory and retaliatory practices against other prospective employees, mandating discrimination

and retaliation prevention training, and taking other such injunctive action as the Court finds appropriate;

I. Such other legal and equitable relief to which Ms. Gifford may be entitled; and

J. Ms. Gifford demands a jury to try all claims and issues triable by a jury.

Respectfully submitted,

RICKARD MASKER, PLC

*s/ Curt M. Masker*
Caraline E. Rickard, TN Bar No. 034414
Curt M. Masker, TN Bar No. 037594
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Telephone: (615) 270-2098
Facsimile: (615) 821-0632
caraline@maskerfirm.com
curt@maskerfirm.com

*Counsel for Ms. Gifford*